CITY OF AKRON, APPELLANT, *v.* PUBLIC UTILITIES COMMISSION OF OHIO ET AL., APPELLEES.
CITY OF CANTON ET AL., APPELLANTS, *v.* PUBLIC UTILITIES COMMISSION OF OHIO ET AL., APPELLEES.

[Cite as City of Akron v. Pub. Util. Comm., 5 Ohio St. 2d 237.]

238

(Nos. 39381 and 39385—Decided March 23, 1966.)

240

 

*Mr. R. C. Sheppard*, director of law, *Mr. Robert J. White, Messrs. Steer, Strauss, White & Tobias* and *Mr. James J. Ryan*, for appellant in case No. 39381.

*Mr. Harold E. DeHoff, Mr. Richard G. Reichel, Mr. Bronis J. Klementowicz* and *Mr. James L. Harkins, Jr.*, for appellants in case No. 39385.

*Mr. William B. Saxbe*, attorney general, *Mr. Theodore K. High* and *Mr. Clark G. Redick*, for appellee Public Utilities Commission.

*Messrs. Jones, Day, Cockley & Reavis, Mr. Walter J. Milde, Mr. James E. Courtney* and *Mr. Thomas G. Roderick*, for appellee East Ohio Gas Company.

BROWN, J. Two matters decided by the commission preliminary to the hearing on the merits are assigned as error by the appellants.

The first of these concerns the overruling on August 28, 1961, of the motion by Akron, Cleveland and Massillon that the company's application be dismissed as prematurely filed.

The second concerns the preliminary order approving a random-sampling plan proposed by the company as one means of preparing evidence to be presented as to depreciation of the company's pipe, a large part of its inventory.

Although specifically assigned as error, the overruling of the first of these motions was neither argued nor briefed and will be considered abandoned.

The second of these preliminary orders was commented upon by this court in *City of Canton* v. *Pub. Util. Comm.*, 174 Ohio St. 373. That case held that, in view of the limitations on use of the result of the random sampling as evidence, the order affected no substantial rights of the parties, was not a final order, and, hence, was not appealable. However, it was there observed and is here determined that that order merely

approved one means of presenting evidence as to depreciation of part of the company's inventory. The result of such random sampling was not made dispositive of this area of inquiry.

In their brief in the instant cause the cities merely renew their complaint made in the *City of Canton case*, fortified with the argument that they were not given time or opportunity to be heard in opposition to the random-sampling plan. It is difficult to see how the introduction of the result of the sampling, considering the limitations of its use as evidence, can be considered prejudicial to the cities.

Such objection at this time is referrable only to the weight of the evidence under appellants' complaint that they were not entitled to and were not given "due process of law."

The cities' briefs contain varied complaints. Among these are limitations of time to prepare and present evidence or to prepare and present briefs or arguments at various points in the proceedings. The length of time consumed by these hearings has been stated. It is observed throughout the record that extreme latitude was granted to counsel for the cities at all times. One company witness was cross-examined for 33 days. In view of these observations, we cannot agree with so much of the claim of lack of due process as is attributed to limitations of time imposed by the commission upon the cities. Orders granting or refusing continuance as well as orders setting time for argument or time for filing briefs generally rest in the sound discretion of the trial court or, as in this cause, in the sound discretion of the commission. *Norton* v. *Norton,* 111 Ohio St. 262; *State, ex rel. Buck,* v. *McCabe et al., Judges,* 140 Ohio St. 535; *Moran Towing & Transportation Co., Inc.,* v. *Conners-Standard Marine Corp.,* 285 F. 2d 368; *Federal Communications Comm.* v. *WJR, The Goodwill Station, Inc.,* 337 U. S. 265.

We have reviewed the rulings made and the time allowed by the commission as disclosed by the record. Neither the rulings nor orders called to our attention nor the overall record indicates an abuse of discretion.

Argued in the brief as showing a lack of due process were specific rulings of the court admitting evidence offered by the company over objection by the cities and rulings of the com-

mission excluding evidence offered by the cities either upon objection or *sua sponte*. Lumped with these specific objections were arguments that the commission's failure to rely upon the opinions of the cities' experts admitted and/or the commission's exclusion of the opinions of the cities' experts in matters concerning reproduction-cost-new of the inventory and/or the commission's greater reliance upon the report of its own staff or company witnesses in this area somehow amounted to lack of due process.

The qualifications of an expert is a matter for determination by the trier of the facts and "rulings with respect to such matters will ordinarily not be reversed unless there is a clear showing that the court abused its discretion." *Ohio Turnpike Commission* v. *Ellis*, 164 Ohio St. 377, 386. An expert must be qualified in the matters about which he is to testify. *State* v. *Auerbach*, 108 Ohio St. 96. Such rulings by the commission can seldom be considered an abuse of discretion. *Westinghouse Electric & Mfg. Co.* v. *Denver Tramway Co.*, 3 F. Ed 285.

The remainder of the appellants' contentions and arguments in this area relate to judgments by the commission in weighing the evidence. This court has repeatedly held that it will not substitute its judgment for that of the commission as to conclusions drawn from evidence, unless the findings and order of the commission are manifestly against the weight of the evidence or there is no evidence. *City of Kenton* v. *Pub. Util. Comm.*, 3 Ohio St. 2d 71, 73. There is evidence supporting all aspects of the order appealed from and no finding of the commission is against the manifest weight of the evidence.

The objection made by the cities to the introduction of the staff report was based upon the absence of Hampton, a former commission employee under whose supervision much of the work of preparing the staff report was done and whose opinions and judgments made up substantial portions of the report.

The staff report, prepared as required by Section 4909.19, Revised Code, was competent evidence in this cause. *Lindsey* v. *Pub. Util. Comm.*, 111 Ohio St. 6.

Manifestly, the staff report does not need "testimonial

support" as the cities contend. See, also, *City of Marietta* v. *Pub. Util. Comm.*, 148 Ohio St. 173.

The burden of opposing this evidence rests with the cities. They must present evidence that is credible, authoritative and challenging. See *City of Columbus* v. *Pub. Util. Comm.*, 154 Ohio St. 107; *City of Cleveland* v. *Pub. Util. Comm.*, 164 Ohio St. 442.

The problem of allocation of rate base is raised by the appellants. The claim originally made in the notices of appeal was tied to the alleged failure of the staff report to break down the total value of the company's property into its value by counties as required by Section 4909.06, Revised Code. Additional complaint was made as to the invalidity of the staff report. These complaints were again based upon the "lack of testimonial support" of this document by former commission employee Hampton.

The problem of allocation has been referred to as a "controversial" problem. *Ohio Edison Co.* v. *Pub. Util. Comm.*, 173 Ohio St. 478. In that case, the validity of a rate set by ordinance of the city of Mansfield was in question. It became material to determine how that part of the company's property which made up the system-wide rate base and the expenses connected therewith should be allocated among the various areas using Ohio Edison electricity and especially how they should be allocated to the city of Mansfield.

In the present situation, the entire system except for Lake and Ashtabula Counties is included in the new rate. Such allocation as needed to be made has been made on the basis of evidence in the record.

In its opinion the commission points out: "It should be observed that the exhibits filed with said application include both the municipalities and adjacent rural areas except Lake and Ashtabula Counties. (EOx13) The pipe inspections and evidence thereon under the random-sampling plan authorized by the commission related to all property in the service area of the company except Ashtabula and Lake Counties."

It is apparent that the problem of allocating rate-base valuation is much less severe in this cause than it was in *Ohio Edi-*

*son* v. *Pub. Util. Comm., supra.* As the percentage of a utility's total property, which makes up its system-wide rate base and which is attributable to the area in which a rate revision is being sought, increases, the severity of the problem of allocation decreases.

Additionally, we note the total lack of evidence in the record from any party of any cost-causing factor peculiar to any specific portion of the service area under consideration or as to any class of consumers within the service area.

Such evidence if present would function not to disprove the reasonableness of the rate set but would function to disprove the reasonableness of any area rate.

Within the same utility-service area, assuming the absence of factors producing grossly disproportionate cost to produce or deliver the utility product, minor differences in customer classification or customer location may be disregarded.

It is argued that the commission set an unreasonable rate of return. The rate of return allowed in the order appealed from is 6.25%. The commission's determination that that rate was fair is a factual determination based upon evidence.

One of the two witnesses for the cities in this matter testified that a reasonable rate of return on the company's rate base would be 5.17%. The other stated as his judgment that a reasonable rate of return would be 5.39%. Each of these witnesses, in arriving at his judgment in this matter, based his estimate of the cost of equity upon price-earnings ratio, and appellants argue that "the commission was arbitrary and capricious in choosing its own 'enlightened judgment' over the actual facts of the money markets."

The company's witnesses on the other hand buttressed their opinions that current price-earnings ratios are of little or no significance by pointing to the fact that price-earnings ratio of stocks included in the Dow-Jones industrial averages was only 5.2% in mid-1963 with a yield of only 3.3%, while at the same time the earning-price ratio of 35 selected gas distribution companies was 5.9% with a dividend yield of 3.8%. The company takes the position that these figures demonstrate either that the riskier a business is the lower must be its rate of return or that earnings-price ratios can not be depended

upon as a measure of reasonable rate of return unless an adjustment is made to increase the incentive to the buyer. That is to say a growth factor must be added since stock buyers buy prospective rather than current earnings.

The company's experts pointed out that stock splits and stock dividends of the shares of the gas companies used by the cities' expert in his study of ratios disclose that if price is adjusted for these shares to exclude realized growth between the years 1960 and 1963 the earnings would average between 8% and 9 %.

On this basis it is argued that this is the rate of growth which gas utility company investors have received in the past and will expect in the future.

The two conflicting views are to some extent irreconcilable, yet the judgment to be made as to the reasonableness of the rate of return allowable to this industry with this rate base under these circumstances is a "judgment figure established by the Public Utilities Commission in the exercise of its administrative *expertise.*" See *Ohio Fuel Gas Co.* v. *Pub. Util. Comm.,* 174 Ohio St. 585, 602.

The rate of return allowed by the commission is not unreasonable, was not arrived at in an unlawful manner, nor is it against the weight of the evidence.

The "gas escalation clause" which is approved in connection with the order dated November 20, 1964, is attacked by the cities upon two grounds. It is claimed that the inclusion of any gas escalation clause in the commission's order is an unconstitutional delegation by the commission of its power to set rates. It is claimed that if such escalation clauses are not unlawful for this reason then this particular escalation clause is so vague that the commission's action in approving its use was "arbitrary and capricious."

It is noted that this court approved a similar escalation clause in *City of Cleveland* v. *Pub. Util. Comm.,* 3 Ohio St. 2d 82. The record discloses that the claim of vagueness is without factual basis. Permitting an escalation clause has the effect of eliminating one of the variables which would otherwise distort the dollar amount of earnings which the commission's order contemplates will be reasonable and which will result from the

application of the approved rate of return (6.25%) to the re-construction-cost-new-less-depreciation inventory value as determined by the order appealed from.

Also as shown by the record in this cause, the presence of the escalation clause here results in a lowering of the rates charged to the subscribers due to a reduction which occurred in the cost of gas furnished by the company as a result of a rate reduction authorized by the Federal Power Commission effective on October 1, 1964.

We are unable to see how the appellants can complain that prejudice occurred when the commission disregarded the cities' evidence of the cost of gas and chose to approve tariffs based upon reduced cost, which resulted from a subsequent order of a government agency, of which order the commission could properly take judicial notice. *London & Lancashire Indemnity Co. of America* v. *Board of Commrs. of Columbiana County,* 107 Ohio St. 51; *Black* v. *City of Berea,* 137 Ohio St. 611. See, also, *Citizens Gas Users Assn.* v. *Pub. Util. Comm.,* 165 Ohio St. 536.*

The appellant cities claim that the commission by its order "has burdened the ratepayer with an excessive cost of federal income tax." The commission's order recites that in computing tax the commission used the 1965 tax rate of 48% rather than the rate of 52% which was in effect during the test period. This is to the advantage of the ratepayers and is proper under the holding of this court in *East Ohio Gas Co.* v. *Pub. Util. Comm.,* 133 Ohio St. 212.

A review of the record and of the commission's findings indicates that the allowance for federal income taxes as a cost of service was computed by applying 1965 rate to the allowed annual dollar return as ordered by this court in *General Telephone Co.* v. *Pub. Util. Comm.,* 174 Ohio St. 575.

In view of this fact, the complaint of the appellants that

---

*See "Escalator Clauses in Public Utility Rate Schedules" by R. S. Trigg, 106 University of Pennsylvania Law Review, 964. In this comprehensive review of the usefulness of such clauses in regard to fuel costs of utilities, it is commented that every political jurisdiction in this country has escalator clauses in the published tariffs of its utilities, and that such clauses result in reduced rate litigation, hence, lower costs of administration.

no allowance was made for savings on federal income tax experienced through filing with its parent company of a joint tax return is without merit.

The brief of the *amici curiae*, the Beldon Brick Company and others, is an attempt by one not a party to these appeals to inject an issue which is not before the court at this time. On appeal from an order of the Public Utilities Commission, this court has no power to consider any matter which was not contained in an application for rehearing. *City of Cincinnati* v. *Pub. Util. Comm.*, 151 Ohio St. 353, paragraph 17 of the syllabus.

Since this court is of the opinion that the order of the commission is not unreasonable or unlawful, it is affirmed.

*Order affirmed.*

TAFT, C. J., ZIMMERMAN, MATTHIAS, O'NEILL, HERBERT and SCHNEIDER, JJ., concur.