CITY OF SAN ANTONIO, Appellant,

v.

SAN ANTONIO INDEPENDENT SCHOOL DISTRICT et al., Appellees.

No. 6513.

Court of Civil Appeals of Texas, El Paso.

Feb. 20, 1976.

Rehearing Denied March 10, 1976.

Crawford B. Reeder, First Asst. City Atty., Matthews, Nowlin, MacFarlane & Barrett, James D. Baskin, Jr., Jon C. Wood, W. Roger Wilson, San Antonio, for appellant.

Harvey L. Hardy, San Antonio, for appellees.

Ted Butler, Crim. Dist. Atty., Civil Section, Robert C. Story, Asst. Crim. Dist. Atty., San Antonio, for intervenors.

Vinson, Elkins, Searls, Connally & Smith, J. Evans Attwell, Pieter Meade Schenkkan, Houston, for Houston Natural Gas Corp.

## OPINION

OSBORN, Justice.

This is an appeal from a judgment in a non-jury trial where the record consists of pleadings, admissions, and a stipulation as to exhibits and a stipulation as to testimony. There is no statement of facts, but the transcript is over 400 pages. The case involves fuel cost adjustment charges added on to the gas and electric bills of customers of a public utility and also a percentage charge collected on the gross revenues of the utility. Suit was filed by twelve independent school districts located in Bexar County, with Bexar County and the Bexar County Hospital District as intervenors. The City of San Antonio, owner of the public utility, was defendant in the trial Court and is Appellant in this Court.

The trial Court held that the fuel adjustment clause and the gas adjustment clause contained in the gas and electric rate ordinances passed by the City Council of San Antonio, and applicable to all gas and electric rate schedules, are invalid on the ground that the City Council, by including those clauses in the gas and electric rate, delegated legislative rate regulatory authority to the personnel of the city-owned gas and electric utility. The trial Court enjoined the future collection of all fuel and gas adjustment charges without specific approval by the City Council, and awarded damages to the Appellees in an amount equal to all fuel and gas adjustment charges paid by them for a period from four years prior to the filing of the suit to the date of judgment.

The trial Court also held that the gas and electric rates as applied to Appellees were illegal to the extent that they generate revenue which permits benefits to the City of San Antonio, in services and money for its General Fund, holding that such services and payments to the City are void because they are a sales tax from payment of which Appellees are exempt. The trial Court fur-ther enjoined the City from charging and collecting such amounts from Appellees and granted Appellees damages equal to such payments paid into the City's General Fund for the period from four years prior to the filing of the suit to the date of the judgment.

By its First Point of Error, the Appellant contends the trial Court erred in holding that the fuel adjustment clause in the City Ordinance constituted unlawful delegation of regulatory authority to set gas and electric rates and was therefore unconstitutional. We agree.

The City of San Antonio owns its gas and electric systems, having purchased them in 1942 pursuant to Articles 1111–1118, Tex. Rev.Civ.Stat.Ann. In accordance with such Statutes and in order to obtain funds to finance the purchase of the systems, the City entered into a Trust Indenture contract for the issuance of electric and gas revenue bonds. Pursuant to Article 1115, Tex.Rev.Civ.Stat.Ann., the management of the gas and electric systems was by the terms of the Trust Indenture placed in the hands of a five-member board called the City Public Service Board of San Antonio. The City Council of San Antonio, in the exercise of its legislative authority, sets and regulates the rates charged for gas and electric service. *Kousal v. Texas Power & Light Co.,* 142 Tex. 451, 179 S.W.2d 283 (1944). In the exercise of its rate regulatory authority, the City Council in April, 1965, and in June, 1974, passed Ordinances providing schedules of rates for each class of gas and electric customer of the City systems and defines the classifications of gas and electric service to which the various rates apply. Each of said Ordinances also contains a fuel adjustment clause applicable to the electric rate schedule and the gas rate schedule.

In September, 1973, the Railroad Commission entered an Interlocutory Order giving Lo-Vaca Gathering Company, the principal supplier of gas to the City, the benefit of an interim rate of 5¢ per MCF of gas, plus Lo-Vaca's weighted average cost of

gas.[1] This has resulted in the City paying much higher rates for gas received from its supplier. As the purchase cost of gas by the City has increased, such increase has been reflected in the City's gas and electric charges as a result of the fuel adjustment clauses in the City Ordinances. This has resulted in some customers' bills being increased two or three times more than the basic utility charge because of the fuel adjustment charge.

The City Council does not conduct a public hearing prior to the monthly billings of customers and does not formally approve each monthly fuel cost adjustment in rates. The fuel adjustment clauses are contained in the ordinance and operate automatically based upon supply and fuel costs and were enacted to obviate the necessity for monthly public hearings. The Appellees contend that since hearings are not held by the City Council to establish each and every fuel adjustment change in rates, as may be required based upon the supply and cost of fuel, that there has been an unlawful delegation of the rate-making authority by the lawfully constituted authority, the City Council, to an unlawfully constituted authority, the City Public Service Board of San Antonio.

Fuel adjustment escalator clauses have been adopted by various types of public utilities nationwide in the past several years. Those clauses have been attacked on numerous grounds, including an unconstitutional delegation of authority. Almost without exception, the clauses have been upheld. The leading case is *City of Norfolk v. Virginia Electric and Power Company,* 197 Va. 505, 90 S.E.2d 140 (1955). In that case, the Supreme Court of Virginia said:

"The proposed escalator clause is nothing more or less than a fixed rule under which future rates to be charged the public are determined. It is simply an addition of a mathematical formula to the filed schedules of the Company under which the rates and charges fluctuate as the wholesale cost of gas to the Company fluctuates. Hence, the resulting rates under the escalator clause are as firmly fixed as if they were stated in terms of money."

It was also contended in that case that the escalator clause resulted in a denial of procedural due process of law to the consumers because there was no public notice and hearing on each occasion when the actual rate was increased. With regard to that contention, the Court said:

"In the instant case there was sufficient notice to the public that the Commission would hold a formal hearing on the application of the Company to determine whether it was just and reasonable to insert the escalator clause into its filed schedules. The City appeared and participated in the proceedings, and after an investigation by the Commission and a full hearing, the Commission found as a fact that the proposed escalator clause was 'just and reasonable', a finding which the record does not warrant us in reversing. Consequently, the requirements of procedural due process have been fulfilled in this case."

The decision by the Virginia Court was followed by the Supreme Court of Illinois in *City of Chicago v. Illinois Commerce Commission,* 12 Ill.2d 607, 150 N.E.2d 776 (1958). In that case, it was contended that the automatic adjustment clause was against the public interest and that the action of the Commission in adopting the clause exceeded its statutory power. In denying such contention, the Court said:

"Under the common, as well as the statutory definition, it is clear that the statutory authority to approve rate schedules embraces more than the authority to approve rates fixed in terms of dollars and cents. The present automatic adjustment clause is a set formula by which the price of natural gas to the ultimate consumer is fixed by inserting in the formula the

---

1. On a closely related issue, See: *Railroad Commission of Texas v. City of Austin,* 524 S.W.2d 262 (Tex.1975).

wholesale price of natural gas as established by the FPC."

The Court in that case quoted extensively from the opinion by the Virginia Supreme Court and noted that as early as 1954 sixty-five gas distributing companies in twenty-six states had adjustment clauses in their rate schedules based on the cost of purchased gas, and twenty-two companies in twelve states had adjustment clauses based on either cost of purchased gas or fuel to manufacture gas.

The reasoning set forth in those two Supreme Court cases in the 1950's has now been adopted by the highest court of other states which have passed upon fuel adjustment escalator clauses. See *United Gas Corporation v. Mississippi Public Service Commission*, 240 Miss. 405, 127 So.2d 404 (1961); *City of El Dorado v. Arkansas Public Service Commission*, 235 Ark. 812, 362 S.W.2d 680 (1962); *City of Akron v. Public Utilities Commission*, 5 Ohio St.2d 237, 215 N.E.2d 366 (Ohio 1966); *Public Service Company of New Hampshire v. State*, 113 N.H. 497, 311 A.2d 513 (1973); *Maestas v. New Mexico Public Service Commission*, 85 N.M. 571, 514 P.2d 847 (New Mexico 1973).

Following the Virginia and Illinois cases, the Attorney General of Texas on November 20, 1975, in Opinion No. H–741, concluded "A municipality does not necessarily surrender its governmental power when it grants an automatic rate adjustment to a public utility pursuant to an adequate objective formula if it is based upon readily ascertainable costs controlled by the impersonal forces of the marketplace." In our case, there seems to be no question but that the cost which the City of San Antonio pays to its principal supplier of gas is at a rate set by the Texas Railroad Commission, the agency having responsibility for control of production, supply and cost of intrastate gas at the marketplace in San Antonio and throughout the State. Art. 6053, Tex.Rev. Civ.Stat.Ann.

The City Public Service Board of San Antonio has no authority or discretion to change the rates or the formula in the fuel adjustment clauses and it does not perform any legislative function in the rate-making process. The fact that the Public Service Board does determine when and how much gas to buy does not give it any rate-making authority, and in making the decision as to gas purchases the Board only acts to meet the needs required by the customers of the city-owned utilities.

We conclude that fuel adjustment escalator clauses are a legitimate and valid procedure in the operation of a public utility. Such clauses greatly reduce the necessity for expensive and time consuming public hearings at which rates must be set high enough to meet future inflationary cost, and yet they protect the consumer when costs are reduced. At the same time they protect the utility in a legitimate operating expense which includes cost of an essential fuel, and do so in a method which shortcuts the time lag between changes in cost and the payment of compensation for utility services. Unfortunately for the consumer, all of the changes during the past several years have been in an upward spiral, but this factor alone does not make the device used invalid or unconstitutional.

█ Having concluded that the Ordinances under attack are not invalid, we sustain the Appellant's First Point of Error and hold that the trial Court erroneously invalidated the fuel adjustment charges and improperly awarded damages based upon its determination of the invalidity of those clauses and improperly enjoined the future collection of charges under such clauses. Such conclusion makes it unnecessary for us to consider the Second Point of Error.

By its Third Point of Error, the Appellant contends that the trial Court erred in holding that a sales tax was imposed by operation of a bond indenture formula which permitted the City to recover from revenues of the utility system for general City purposes a percent of gross revenues, and in holding that the Appellees are exempt from such tax. We agree.

The above mentioned Trust Indenture provides for a prior lien on the properties and all revenues of the gas and electric

systems for payment of bonds issued to purchase the utility system, and the Indenture as amended also provides in detail for the application of the revenues of the City gas and electric systems. Article V, § 5, of the Indenture, provides for a payment from the utility system revenues, after paying cost of operation and principal and interest on the bonds, to the General Fund of the City of San Antonio an amount based upon the value of the system's fixed capital assets located within the City limits, as a reimbursement for the loss of taxes which the City would receive were the utility system privately owned. Section 6, as amended in 1960, provides that, after meeting operating and Bond Fund requirements, additional payments are to be made to the City's General Fund from the remaining revenues sufficient to reimburse the City for all money which has been paid to the Board of Trustees during such fiscal year for gas and electric services of the systems used by the City for municipal purposes during such fiscal year, and for an additional payment to the City of a cash sum which, when added to the reimbursements for taxes and utility services and the amount expended annually for additions to the street and traffic lighting, will amount to 14% of the system's gross revenues. The trial Court has held that the benefits not exceeding 14% of the gross revenues of San Antonio's city-owned gas and electric utility which inure to the City, in municipal utility services and cash transferred to the General Fund, constitute a sales tax and that Appellees as governmental bodies are exempt from paying that portion of their gas and electric charges which constitute such tax.

Assuming, without the necessity of making a determination, that the 14% charge is a sales tax, as found by the trial Court, we conclude that the Appellees are not exempt from such a tax and therefore we sustain the Appellant's Third Point of Error. Basically, the Appellees claim their exemption under that provision of Art. 8, § 2, of the Texas Constitution which states, in part, that " * * * the legislature may, by general laws, exempt from taxation public property used for public purposes; * *."

It is further contended that such constitutional provision is statutorily mandated under the provision of Article 7150, § 4, Tex. Rev.Civ.Stat.Ann., which with regard to property that shall be exempt from taxation states:

"All property, whether real or personal, belonging exclusively to this State, or any political subdivision, thereof, * * *."

■ It should be noted that the constitutional provision appears to refer to ad valorem taxes. 54 Tex.Jur.2d, Taxation, § 67, at 213. In *State v. City of El Paso,* 135 Tex. 359, 143 S.W.2d 366 (1940), suit was brought against a political subdivision of the State, a city, to recover taxes, penalties and interest upon gasoline alleged to be payable under the motor fuel tax laws of this State. In denying the claimed exemption, the Court noted that under the motor fuel tax law it is evident that the tax levied for use of motor fuel in this State and the tax levied for sale of motor fuel are the same, and that the use of motor fuel without actual first sale in this State is still a statutory sale. Thus, the Court concluded that the City of El Paso which purchased fuel in New Mexico for use upon the public highways of this State was required to pay a user tax thereon. In reaching this result, the Court said:

"In this instance we think that beyond any doubt our motor fuel tax laws tax the first actual sale of motor fuel in this State, regardless of whether or not it is sold to a city."

■ Undoubtedly, the 14% charge increased the net revenues of the City from the operation of the city-owned gas and electric utility, but it was not an ad valorem tax. Instead, it was a part of the total charge for a utility service and there is no contention nor proof that such charge was excessive or prohibitive to the utility consumers such as Appellees.

Since the entire charge made by the City for utility services was a charge for services rendered and did not constitute an attempt to provide a tax in lieu of ad valorem taxes, nor an attempt to reimburse one taxing

authority from another taxing authority solely for the loss of a tax base, Appellees' Crosspoints One and Two are overruled. The authorities cited, *Lower Colorado River Authority v. Chemical Bank & Trust Co.,* 144 Tex. 326, 190 S.W.2d 48 (1945); *San Antonio Independent School District v. Board of Trustees of the San Antonio Electric & Gas System,* 204 S.W.2d 22 (Tex.Civ. App.—El Paso 1947, writ ref'd n. r. e.) are distinguishable.

By their last Crosspoint, Appellees contend that the addition of the 14% charge on the fuel adjustment charges was invalid and in effect results in a substantial windfall profit for the City as a result of the substantial fuel adjustment charges which have been made in recent years. While we can readily agree with Appellees' position as to the effect the 14% charge has had by reason of the fuel adjustment charges, that appears to be a matter for determination by the rate-making authority, i. e., the City Council. The Council has now taken action to correct, at least in part, the inequity which may have resulted. Nevertheless, the charges resulting from the 14% charge being collected on the fuel adjustment charge were not invalid. Crosspoint Three is overruled.

Having concluded that the 14% charge was not a tax from which Appellees are exempt, and having sustained Appellant's Third Point of Error, we hold that the trial Court erroneously awarded judgment for recovery of such charges and erroneously enjoined future collection of such charges. Such conclusion makes it unnecessary for us to consider the last Point of Error.

The judgment of the trial Court is reversed and judgment is here rendered for the Appellant.