

## Office of the Attorney General
### State of Texas

**DAN MORALES**
ATTORNEY GENERAL

November 10, 1993

Mr. Ray Farabee
Vice Chancellor and General Counsel
Office of General Counsel
The University of Texas System
201 West Seventh Street
Austin, Texas 78701

Opinion No. DM-272

Re: Whether, under section 11.11 of the Tax Code, the M.D. Anderson Cancer Center Jesse H. Jones Rotary House International is exempt from *ad valorem* taxation and related question (RQ-593)

Dear Mr. Farabee:

On behalf of the Board of Regents of The University of Texas System (the "board"), you have asked us to determine whether the M.D. Anderson Cancer Center Jesse H. Jones Rotary House International is exempt from *ad valorem* taxation under section 11.11 of the Tax Code. We conclude that it is.

Reasoning "that cancer is causing four thousand (4,000) deaths annually in Texas, that many of the persons so afflicted are indigent persons, that there is no adequate provision made in this State for the study of the cause, prevention, or cure of cancer, and that there are no State institutions devoted thereto," the legislature created the hospital that now is denominated The University of Texas M.D. Anderson Cancer Center (the "Cancer Center") in 1941. *See* Acts 1941, 47th Leg., ch. 548, at 878. Currently, chapter 73, subchapter C of the Education Code provides for the Cancer Center. Section 73.102 of the Education Code states that the Cancer Center and its substations[1] "shall be devoted to the diagnosis, teaching, study, prevention, and treatment of neoplastic[2] and allied diseases." Sections 73.110 and 73.111 of the Education Code authorize the board to accept gifts and grants of money for the benefit of the Cancer Center and its substations. You state that the Jesse H. Jones Rotary House International (the "Rotary House"), which opened in February 1993, was constructed on lands the board owns and was built from

---

[1]The board may establish diagnostic and treatment substations as it considers appropriate. Educ. Code § 73.105. Like the Cancer Center itself, each substation must conform to the standards of the American College of Surgeons and the American Medical Association. *Id.*

[2]A "neoplasm" is a "[n]ew growth; tumor; an abnormal tissue that grows by cellular proliferation more rapidly than normal and continues to grow after the stimuli that initiated the new growth cease" STEDMAN'S MEDICAL DICTIONARY 931 (5th ed. 1982)--*i.e.*, to the layperson, "cancer."

gifts of eight million dollars from the Rotary Club of Houston and the Houston Foundation, in addition to nine million dollars that the board raised through the issuance of revenue bonds. We understand that the board owns the Rotary House.

You have included with your letter a statement from Michael J. Best, Chief Financial Officer of the Cancer Center, and a brochure promoting the Rotary House. Mr. Best describes the Rotary House as a "patient housing center" where a Cancer Center patient and the patient's family may stay while the patient is undergoing treatment at the Cancer Center. Guests of The University of Texas Systems ("The University") also may stay at the Rotary House. Mr. Best explains:

> Promotion and marketing of the Rotary House is confined to publicizing *its services* to [Cancer Center] patients and their guests and to guests of the University. . . . The Rotary House does not actively seek business from the public at large . . . . Our experience since opening to our guests on February 13, 1993[,] reflects that only patients, their families[,] and University of Texas visitors have been guests at the Rotary House.

Mr. Best also states the room rates at the Rotary House are below market rates for comparable lodging. Finally, Mr. Best states that no rooms are leased on a long-term basis to employees and that no permanent residents stay at the Rotary House.

The promotional brochure points out several special features of the Rotary House:

> --The Rotary House is connected to the Cancer Center by an overhead walkway[3] and covered garden walk. The Rotary House also provides wheelchair-equipped transportation to the Cancer Center.

> --All rooms accommodate wheelchairs and medical equipment.

> --Every room is equipped with a refrigerator, microwave, dishes, dishwasher, iron, and ironing board. Laundry facilities are available in the building.

> --The television in every room is linked to the Cancer Center's closed circuit television channels so that patients and families can watch patient educational programs in their rooms.

---

[3]In contrast, Mr. Best states that the overhead covered walkway will not open until 1995.

--The Rotary House has a Patient/Family Learning Center, where patients and family members can learn to care for themselves and deal with their illness.

--The Rotary House offers patient and family education classes; it has a videotape library of health care instructional tapes that patients and families may view in their rooms.

--The Rotary House offers planned social activities, including craft-making classes, shopping and recreational trips, and support groups; it makes available to the patients and families its music and game room, leisure library, counseling services, and chaplains.

Article VIII, section 2(a) of the Texas Constitution authorizes the legislature to, "by general laws, exempt from taxation public property used for public purposes." *See United States v. 120,000 Acres of Land*, 50 F. Supp. 754, 755 (N.D. Tex. 1943) (stating that article VIII, section 2 requires public property to be devoted to public use); *City of San Antonio v. San Antonio Indep. Sch. Dist.*, 535 S.W.2d 671, 675 (Tex. Civ. App.--El Paso, writ ref'd n.r.e.), *aff'd*, 550 S.W.2d 262 (1976) (stating that article VIII, section 2 refers to *ad valorem* taxes). Pursuant to the authority article VIII, section 2(a) grants it, *see* 21 J. HOWELL, PROPERTY TAXES § 200, at 130 (1975) (stating that article VIII, section 2 simply grants legislature power to exempt public property used for public purposes), the legislature has enacted section 11.11 of the Tax Code, which provides in pertinent part as follows:

(a) Except as provided by Subsections (b) and (c) of this section, property owned by this state or a political subdivision of this state is exempt from taxation if the property is used for public purposes.

(b) [Pertaining to land Permanent University Fund owns]

(c) [Pertaining to agricultural or grazing land a county owns for the benefit of public schools]

(d) Property owned by the state that is not used for public purposes is taxable. Property owned by a state agency or institution is not used for public purposes if the property is rented or leased for compensation to a private business enterprise to be used by it for a purpose not related to the performance of the duties and functions of the state agency or institution or used to provide private residential housing for compensation to members of the public other than students and employees of the state agency or institution owning the

property, unless the residential use is secondary to its use by an educational institution primarily for instructional purposes. . . .

(e) It is provided, however, that property that is held or dedicated for the support, maintenance, or benefit of an institution of higher education as defined in Chapter 61, Texas Education Code,[4] but is not rented or leased for compensation to a private business enterprise to be used by it for a purpose not related to the performance of the duties and functions of the state or institution or is not rented or leased to provide private residential housing to members of the public other than students and employees of the state or institution is not taxable. [Footnote added.]

You state that the Harris County Appraisal District (the "appraisal district") has cancelled the tax exemption on the Rotary House pursuant to section 11.11(e), based on the appraisal district's position that the Rotary House provides "private residential housing to members of the public other than students and employees of the state or institution." The board, on the other hand, believes that the Rotary House is public property "used for public purposes," thereby qualifying for exemption from *ad valorem* taxes under section 11.11(a). We must determine, therefore, whether, to be exempt from *ad valorem* taxation, property that an institution of higher education owns must satisfy the criteria articulated only in subsection (e), either in subsection (a) or (e), or in both subsections (a) and (e).[5]

Initially, we note that an exemption from taxation is to be strictly construed, and the language of the exemption must not be extended beyond the express requirements of the language used. *Jones v. Williams*, 45 S.W.2d 130, 131 (Tex. 1931); 21 J. HOWELL, PROPERTY TAXES § 198, at 126 (1975). *See generally* G. Hartt, III, *Ad Valorem Taxes*

---

[4]Section 61.003(6), (8) of the Education Code defines "institution of higher education" to encompass "any . . . public senior college or university, medical or dental unit, or other agency of higher education."

[5]The meaning of subsection (e) is, at first glance, unclear. Relying solely on the language of section 11.11, we may construe subsection (e) in one of three ways: first, we may construe subsection (e) to mean that property that is held or dedicated for the support, maintenance, or benefit of an institution of higher education is evaluated under subsection (e) but not under subsections (a) through (d) (unless the Permanent University Funds owns the property); second, we may construe subsection (e) to provide a criteria for property that is held or dedicated for the support, maintenance, or benefit of an institution of higher education as an alternative to the requirement in subsection (a) that the property be used for public purposes; or third, we may construe subsection (e) to define uses of property that is held or dedicated for the support, maintenance, or benefit of an institution of higher education that are not public purposes in the context of subsection (a), similar to what subsection (d) does in general for property owned by the state or by state agency or institution.

*and Non-Profit Health-Care Facilities*, 39 TEX. B.J. 864, 865 (1976). Thus, the person claiming an exemption bears the burden of proving that the property or transaction falls within the ambit of the exemption. 21 J. HOWELL, *supra*, § 198, at 126; G. Hartt, III, *supra*, at 865.

The legislature added subsection (e) to section 11.11 of the Tax Code in 1983. *See* Acts 1983, 68th Leg., ch. 1007, § 1, at 5419. As introduced in the House, House Bill 2156 did not propose to add a subsection (e) to section 11.11 of the Tax Code; rather, it proposed to amend section 11.11(a), (d) as follows:

> (a) Except as provided by Subsections (b) and (c) of this section, property owned by this state, [or] a political subdivision of this state, or an institution of higher education, as defined in Section 61.003(7) of the Texas Education Code, is exempt from taxation if the property is used for public purposes or is held or dedicated to the support, maintenance, or benefit of an institution of higher education.

> (d) Property owned by the state that is not used for public purposes or held or dedicated to the support, maintenance, or benefit of an institution of higher education is taxable. The surface property owned by the state, a political subdivision of this state, [agency] or an institution of higher education does not qualify for the exemption provided for in Subsection (a) [is not used for public purposes] if the surface of the property is rented or leased for compensation to a private business enterprise to be used by it for a purpose not related to the performance of the duties and functions of the state, a political subdivision of the state, [agency] or an institution of higher education or used to provide private residential housing for compensation to members of the public other than students and employees of the state, a political subdivision of the state, or an institution of higher education owning the property, unless the residential use is secondary to its use by an education institution primarily for instructional purposes. Any notice required by Section 25.19 of this code shall be sent to the agency or institution that owns the property, and it shall appear in behalf of the state in any protest or appeal related to taxation of the property.

According to the bill analyses prepared for House Bill 2156, as introduced, the bill proposed to amend section 11.11 of the Tax Code to "include[] the concept that property owned by an institution of higher education is exempt if used for a public purpose or is held or dedicated to the support, maintenance, or benefit of an institution of higher education and that property owned by an institution of higher education and not used for [either a public purpose or for the support, maintenance, or benefit of the institution] is

not exempt." House Comm. on Ways and Means, Bill Analysis, H.B. 2156, 68th Leg. (1983); Senate Comm. on Finance, Bill Analysis, H.B. 2156, 68th Leg. (1983). Representative Turner, the author of the bill, stated on the floor of the House that the purpose of the bill was to dispel some existing confusion regarding certain university lands by stating that university land is taxable if the university rents or leases the land; if the university does not rent or lease the land, and the university holds the land for a public purpose, the land is exempt from taxation.[6] Debate on H.B. 2156 on the Floor of the House, 68th Leg. (May 30, 1983) (statement of Representative Turner) (tape available from House Committee Services Office).

While the Senate Committee on Finance discussed the bill, a senate committee member stated that the proposed amendments to subsection (a) would have the effect of exempting from taxation productive, income-producing property belonging to a university. *Id.* Senate committee members therefore asked Senator Harris, the senate sponsor of the bill, to prepare an amendment to the bill that would exempt from taxation only nonprofit property, thereby effectively limiting the class of productive, income-producing property of an institution of higher education that is exempt from taxation. Hearings on H.B. 2156 Before the Senate Comm. on Finance, 68th Leg. (May 28, 1983) (statement of *unidentified speaker) (tape available from Senate Staff Services).*

Consequently, Senator Harris introduced on the floor of the senate an amendment to the bill that proposed to amend section 11.11 of the Tax Code by adding subsection (e) (using language identical to the language currently found in section 11.11(e)) instead of by revising subsections (a) and (d). Debate on H.B. 2156 on the Floor of the Senate, 68th Leg. (May 30, 1983) (statement of Senator Harris) (tape available from Senate Staff Services). The senate adopted the amendment. Subsequent to its adoption in the senate, Representative Turner explained the intent of the senate amendment on the floor of the house, indicating that the amendment only clarified the "original intent of the bill in a little bit better form"; it did not substantively modify the proposed bill. Debate on H.B. 2156 on the Floor of the House, 68th Leg. (May 30, 1983) (statement of Representative Turner) (tape available from House Committee Services Office).

Based upon our review of the legislative history, we conclude that section 11.11 of the Tax Code by its terms exempts from *ad valorem* taxation property that an institution of higher education owns if the property either serves a public purpose, *see* Tax Code

---

[6]A senator attending the meeting of the Senate Committee on Finance at which the committee discussed House Bill 2156 stated that Representative Turner introduced the bill in response to a situation at Texas State Technical Institute ("TSTI"), in which TSTI was leasing houses on campus to persons who were not students or employees of the institution. Hearings on H.B. 2156 Before the Senate Comm. on Finance, 68th Leg. (May 28, 1983) (statement of unidentified speaker) (tape available from Senate Staff Services); *see infra* pp. 7-8 (discussing legislative history of section 11.11(d), Tax Code).

§ 11.11(a), or is held for the support, maintenance, or benefit of the institution, *see id.* § 11.11(e). However, since article VIII, section 2(a) of the Texas Constitution authorizes the legislature to exempt from taxation public property only if the property is used for a public purpose, public property that is exempt pursuant to subsection (e) because it is held for the support, maintenance, or benefit of an institution of higher education is exempt only to the extent that the property is used for a public purpose.

Subsections (d) and (e) of section 11.11 explicitly stipulate particular uses of public property that do not serve a public purpose. Subsection (d) specifically provides that state-owned property does not serve a public purpose "if the property is . . . used *to provide private residential housing* for compensation *to members of the public other than students and employees* of the state agency or institution owning the property, unless the residential use is secondary to its use by an educational institution primarily for instructional purposes." (Emphasis added.) Similarly, subsection (e) specifically provides that property of an institution of higher education does not qualify for the exemption (and thus is not used for a public purpose) if the property is "rented or leased for compensation to a private business enterprise to be used by it for a purpose not related to the performance of the duties and functions of the state or institution or is . . . rented or leased *to provide private residential housing to members of the public other than students and employees* of the state or institution."[7] (Emphasis added.) No one disputes that the Rotary House is publicly owned; ultimately, we must determine, therefore, whether the Rotary House serves a public purpose. The central issue in our determination is whether the Rotary House is used *to provide private residential housing to members of the public other than students or employees* of The University. If it is not so used, we must determine whether the property serves a public purpose.

The Tax Code does not define "private residential housing," and we are unaware of any other statutory provision that defines the phrase. Furthermore, the legislative history of section 11.11(e) of the Tax Code does not indicate how the legislature intended to use the phrase. However, the legislative history of subsection (d), which also uses the phrase "private residential housing," provides some guidance as to the meaning the legislature intended to attach to the phrase.

The legislature added subsection (d) to section 11.11 of the Tax Code by the enactment of House Bill 30 two years prior to the enactment of subsection (e). *See* Acts 1981, 67th Leg., 1st C.S., ch. 13, § 30, at 127. House Bill 30 of the Sixty-Seventh

---

[7]You have informed us that the appraisal district contends that the Rotary House provides "private residential housing to members of the public other than students and employees of the state or institution." We do not, therefore, consider in this opinion whether the Rotary House is "rented or leased for compensation to a private business enterprise to be used by it for a purpose not related to the performance of the duties and functions of the state or institution."

Legislature, first called session, was, essentially, a reintroduction of House Bill 1465, which the legislature tabled during the regular session of the Sixty-Seventh Legislature. The house committee substitute for House Bill 1465 proposed to add section 11.11(d) to provide in pertinent part as follows:

> Property owned by the Texas State Technical Institute or the Texas Department of Corrections is not used for public purposes if the property is used to *provide housing* for employees or their families or for members of the public other than students of the Texas State Technical Institute or inmates of the Texas Department of Corrections. [Emphasis added.]

Representative Peveto, the author of House Bill 1465, informed a subcommittee of the House Committee on Ways and Means that he was introducing this amendment to the original bill specifically for the Huntsville area. Formal Meeting on H.B. 1465 Before a Subcommittee of the House Comm. on Ways and Means, 67th Leg. (Apr. 21, 1981) (tape available from House Committee Services Office). He explained that both the Texas Department of Corrections and the Texas State Technical Institute ("TSTI") owned some homes that they rented out to their employees or to members of the general public. *Id.* He stated that some members of the House Ways and Means Committee felt that such a rental of a home was not serving a public purpose; rather, the rental served as a "revenue generator" for the governmental body owning the homes. *Id.* Furthermore, according to Representative Peveto, the people who live in the rental homes send their children to school in the local school district, and they use city and county services; consequently, they should be paying property taxes on the homes they rent. *Id.*

Representative Peveto's comments indicate that the legislature was concerned primarily with the provision of housing to persons who plan to reside at the leased property long enough to take advantage of the local schools and city and county services. We note that the Sixty-Seventh Legislature, during its first called session, modified the proposed section 11.11(d) to apply not only to the property that TSTI and the Texas Department of Corrections own that is "used to provide housing for employees or their families or for members of the public other than students . . . or inmates," but to property that any state agency or institution owns that is "used to provide private residential housing for compensation to member of the public other than students and employees." *Compare* C.S.H.B. 1465, 67th Leg., § 23 (1981) *with* Acts 1981, 67th Leg., 1st C.S., ch. 13, § 30, at 127. Despite the modifications, we believe the legislature remained concerned about the fact that, at that time, members of the public who reap the benefits normally accorded to taxpayers, such as the use of the local schools, city services, and county services, could rent homes on tax-exempt property owned by state agencies or institutions. We therefore construe "private residential housing" in both subsections (d) and (e) to mean housing in which certain members of the public live longer than temporarily.

In determining whether property is being used to provide "private residential housing" within the context of section 11.11(d), (e) of the Tax Code, we believe that we must apply an analysis similar to that used to determine whether property is a "residence" for purposes of other statutes. Admittedly, "[t]he term 'residence' defies easy definition." Attorney General Opinion JM-611 (1986) at 2. The Texas Supreme Court has, however, provided some direction:

> The meaning that must be given to [the term "residence"] depends upon the circumstances surrounding the person involved and largely depends upon the present intention of the individual. Volition, intention and action are all elements to be considered in determining where a person resides and such elements are equally pertinent in denoting the permanent residence or domicile.

*Mills v. Bartlett*, 377 S.W.2d 636, 637 (Tex. 1964); Attorney General Opinion JM-611 at 2 (quoting *Mills*, 377 S.W.2d at 637); *see also* BLACK'S LAW DICTIONARY 1176 (5th ed. 1979) (defining "residence" as "personal presence at some place of abode with no present intention of definite and early removal and with purpose to remain for undetermined period, not infrequently, but not necessarily combined with design to stay permanently"); WEBSTER'S NINTH NEW COLLEGIATE DICTIONARY 1003 (1990) (defining "residence" as "the place where one actually lives as distinguished from . . . a place of temporary sojourn"); *cf.* Attorney General Opinions JM-1223 (1990) at 4-5 (quoting, as example of proper construction of "residence," Election Code section 1.015, which defines "residence" for purposes of Election Code to mean "domicile, that is, one's home and fixed place of habitation to which he intends to return after any temporary absence"); JM-367 (1985) at 3 (quoting *Pecos & N.T. Ry. Co. v. Thompson*, 167 S.W. 801, 803 (Tex. 1914)) (equating "residence" for purposes of Education Code with "domicile," which means "living in [a particular locality] with the intent to make it a fixed and permanent home"). In general, the determination of one's residence depends upon factual circumstances and individual intention; it is therefore suitable for judicial determination. *Mills*, 377 S.W.2d at 636.

Thus, for purposes of section 11.11(d), (e) of the Tax Code, the determination of whether certain property is used as "private residential housing" "depends upon the *circumstances surrounding the person involved and largely depends upon the present intention of the individual.*" *Id.* at 637. While such a determination generally requires an examination of factual circumstances and individual intention, we believe that we may say as a matter of law that the legislature did not intend "private residential housing" to refer to a place, such as the Rotary House, which provides only temporary accommodations for patients at the Cancer Center and their families and for guests of the university. We conclude that the Rotary House is not "used to provide private residential housing" in the context of section 11.11(d), (e) of the Tax Code. Next, we will consider whether the Rotary House serves a public purpose.

To determine whether public property is used for a public purpose, the Texas Supreme Court has applied a test: whether the property is used primarily for the health, comfort, and welfare of the public. *A. & M. Consol. Indep. Sch. Dist. v. City of Bryan*, 184 S.W.2d 914, 915 (Tex. 1945); Attorney General Opinion JM-405 (1985) at 3. The property need not be used for governmental purposes; the property only must be such that all of the public has a right to use it under proper regulations. *A. & M. Consol. Indep. Sch. Dist.*, 184 S.W.2d at 915. Furthermore, the fact that the governmental owner charges or receives compensation for the use of the property does not mean that the property loses its exemption from *ad valorem* taxation, provided that the charges are incidental to the use of the property and the proceeds received for the use of the property inure to the benefit of the governmental owner. *Id.* at 915-16; *see also* Attorney General Opinion JM-405 at 3 (citing *Lower Colo. River Auth. v. Chemical Bank & Trust Co.*, 190 S.W.2d 48, 50 (Tex. 1945); *A. & M. Consol. Indep. Sch. Dist.*, 184 S.W.2d at 915-16).

You state that members of the medical profession often prescribe outpatient treatment for persons diagnosed with neoplastic diseases, thereby reducing the costs to both the patient and the hospital. A patient in a private hospital room at the Cancer Center pays $385 per day for the room, as opposed to $65-$85 per day for a room in the Rotary House.[8] Additionally, the Cancer Center spent less to construct the Rotary House *than it would have spent to construct additional hospital rooms; overhead expenses incurred in operating the Cancer Center also are much greater than overhead expenses incurred in operating the Rotary House.*

We believe that the Rotary House aids the Cancer Center in the accomplishment of its purpose—the "diagnosis, teaching, study, prevention, and treatment of neoplastic and allied diseases." *See* Educ. Code § 73.102. Additionally, you inform us that the Cancer Center uses all income derived from the Rotary House to fund its operations. In our

---

[8]The Supreme Court of Minnesota has determined that a lodging facility owned by, operated by, and adjacent to a public hospital is exempt from real-estate taxation pursuant to constitutional and statutory provisions exempting property owned by a public hospital that is devoted to and reasonably necessary for the accomplishment of hospital purposes. *Abbott-Northwestern Hosp., Inc. v. County of Hennepin*, 389 N.W.2d 916 (Minn. 1986), reported in 61 A.L.R.4th 1099, 1103-04. The court noted that one of the hospital's primary reasons for operating the lodging facilities is for cost containment. A room in the hospital costs many times more than a room at the lodging facility. *Id.* "Cost containment has become increasingly important to health care providers as Medicare and private insurers have changed the nature of their payments to a flat fee, independent of actual costs, based upon the treatment or surgical procedure involved." *Id.* at 1103.

We note that section 73.106 of the Education Code, incorporating section 552.013(a) of the Health and Safety Code, requires the Cancer Center to admit and support patients without regard to the patient's ability to pay for services. We are uncertain as to whether a patient at the Cancer Center, or a patient's family, may stay at the Rotary House regardless of the patient's ability to pay for the accommodations.

opinion, therefore, the Rotary House is used primarily for the health, comfort, and welfare of the public, and satisfies the Texas Supreme Court's test for determining whether public property is used for a public purpose. *See A. & M. Consol. Indep. Sch. Dist.*, 184 S.W.2d at 915. Because we have found that the Rotary House is not used to provide private residential housing and serves a public purpose, we conclude that it is exempt from taxation pursuant to section 11.11 of the Tax Code.

The chief appraiser of the appraisal district has asked us to determine whether, if we conclude that the Rotary House is exempt from all *ad valorem* taxation under section 11.11 of the Tax Code, the Marriott's interest in the Rotary House is taxable to the lessee pursuant to section 25.07 of the Tax Code. While the chief appraiser's question is premised on his contention that the Marriott Management Services Corporation leases the Rotary House from the board, documents you have submitted indicate that the Marriott Management Services Corporation provides daily management of the Rotary House, but it does not lease the facility. Whether the Marriott Management Services Corporation has a leasehold interest in the Rotary House or simply provides management services is a question of fact that we cannot resolve in the opinion process. *See* Attorney General Opinion DM-98 (1992) at 3. Furthermore, this office does not construe contracts, Attorney General Opinion DM-192 (1992) at 10; consequently, we cannot examine the agreement between the Marriott Management Services Corporation and the board to determine the Marriott's interest in the Rotary House. *But see* Tax Code § 25.07; *City of Beaumont v. Fertitta*, 415 S.W.2d 902, 911 (Tex. 1967); *Martin v. City of Mesquite*, 590 S.W.2d 793, 798 (Tex. Civ. App.--Dallas 1979, writ ref'd n.r.e.) (discussing V.T.C.S. articles 7173 and 7174, predecessors to Tax Code section 25.07, among other sections of Tax Code); Attorney General Opinion M-319 (1968) at 5.

## S U M M A R Y

Pursuant to section 11.11 of the Tax Code, property that an institution of higher education owns is exempt from taxation if the property either serves a public purpose, or is held or dedicated for the support, maintenance, or benefit of the institution. To the extent that property that is held or dedicated for the support, maintenance, or benefit of the institution is not used for a public purpose, however, it is not exempt from taxation. Furthermore, section 11.11 specifies that public property is not used for a public purpose if the property is, among other things, used to provide "private residential housing" for members of the public other than employees or students of the institution.

The determination of whether specific property is used to provide "private residential housing" depends upon the circumstances

surrounding the person involved and largely depends upon the present intention of the individual. Because the Jesse H. Jones Rotary House International provides only temporary accommodations for patients at the M.D. Anderson Cancer Center and their families and for guests of The University of Texas Systems, it is not used to provide private residential housing for purposes of section 11.11(d), (e) of the Tax Code. Additionally, the Rotary House is used primarily for the health, comfort, and welfare of the public; it is therefore used for a public purpose. Consequently, the Rotary House is exempt from *ad valorem* taxation pursuant to section 11.11 of the Tax Code.

Very truly yours,

DAN MORALES
Attorney General of Texas

WILL PRYOR
First Assistant Attorney General

MARY KELLER
Deputy Attorney General for Litigation

RENEA HICKS
State Solicitor

MADELEINE B. JOHNSON
Chair, Opinion Committee

Prepared by Kymberly K. Oltrogge
Assistant Attorney General