520 P.2d 269

**Bruce GRIFFITH, Petitioner-Appellee,**

**v.**

**NEW MEXICO PUBLIC SERVICE COMMISSION, Respondent-Appellant.**

**No. 9725.**

Supreme Court of New Mexico.

March 22, 1974.

**114**

David L. Norvell, Atty. Gen., James L. Parmelee, Jr., Asst. Atty. Gen., Santa Fe, for respondent-appellant.

Modrall, Sperling, Roehl, Harris & Sisk, George T. Harris, Jr., Albuquerque, for petitioner-appellee.

Montgomery, Federici, Andrews, Hannahs & Buell, John B. Pound, Santa Fe, A. S. Grenier, Dallas, Tex., Vice President & General Atty., Southern Union Gas Co., amicus curiae.

## OPINION

MARTINEZ, Justice.

Bruce Griffith, appellee, is the developer of a subdivision known as "Agua Fria Estates" which borders the Village of Ruido-so Downs, New Mexico. Appellee subdivided Agua Fria Estates into 100 residential lots in 1947 and filed his subdivision plat in July of that year with the County Clerk of Lincoln County. Since 1947 appellee has sold nearly fifty of the 100 lots in his subdivision, twenty-seven of which contain private dwellings.

In 1941, appellee acquired a one-half interest in the Hale Spring located approximately one-quarter mile from the subdivision. Shortly after appellee filed his subdivision plat in 1947, he constructed a water system which ran water lines from the spring to each lot in the subdivision. In 1947, appellee charged lot owners $2.00 per month for his water service. Presently, he is charging $3.00 per month.

One lot owner was refused service by appellee for allegedly violating a restrictive covenant in her deed. As the result of an order to show cause why appellee should not obtain a certificate of public convenience and necessity, and a hearing, the New Mexico Public Service Commission, appellant, issued its findings and order on January 2, 1972 which held that appellee was operating a water utility within the meaning of the New Mexico Public Utility Act. Appellee thereafter filed a petition for review in the Lincoln County District Court pursuant to § 68–9–1, N.M.S.A. 1953 (Repl.Vol. 10, Pt. 1, Supp.1973) which in turn found appellee not to be a public utility and annulled and vacated appellant's order. It is from the decision of the district court that the Commission makes its appeal.

The sole issue on appeal is whether or not appellee is a public utility within the meaning of the New Mexico Public Utility Act (hereinafter referred to as the Act).

Section 68–3–1, subd. A, N.M.S. A.1953 (Repl.Vol. 10, Pt. 1, Supp.1973) is part of the preamble to the New Mexico Public Utility Act and reads as follows:

"Public utilities, as defined in section 68–3–2 New Mexico Statutes Annotated, 1953 Compilation, are affected with the

public interest in that, *among other things*:

(1) a substantial proportion of their business and activities involves the rendition of essential public services to a large number of the general public;

(2) their financing involves the investment of large sums of money, including capital obtained from many members of the general public; and

(3) the development and extension of their business directly affects the development, growth, and expansion of the general welfare, business and industry of the state." (Emphasis added)

Generally, a preamble is a declaration by the legislature of the reasons for the passage of the statute and is helpful in the interpretation of any ambiguities within the statute to which it is prefixed. Continental Oil Co. v. Santa Fé, 25 N.M. 94, 177 P. 742 (1918). It is clear from a reading of the preamble that the aforementioned points of public interest are not the only ones contemplated by the legislature. Section 68–3–1, subd. A, supra, specifically states that those reasons for enactment listed within the preamble with regard to a public utility are "among other things," and are not the only reasons for the statute's enactment. Therefore, when we interpret the Act and any ambiguities therein, we shall consider these enumerated policy reasons but shall not be limited by them.

█ Section 68–3–1.1, subd. B, N.M.S.A. 1953 (Repl.Vol. 10, Pt. 1, Supp.1973) states that "This 1967 act shall be liberally construed to carry out its purposes." Section 68–3–1.1, subd. A(2), N.M.S.A.1953 (Repl.Vol. 10, Pt. 1, Supp.1973) states one of the Act's purposes to be the " * * * preservation of the public health, safety and welfare, * * *." Section 68–3–2, subd. F, N.M.S.A.1953 (Repl.Vol. 10, Pt. 1, Supp.1973) defines a "public utility" as follows:

" * * * every person not engaged solely in interstate business and except as hereinafter stated, that now does or hereafter may own, operate, lease or control:

\* \* \* \* \* \*

(3) any plant, property, or facility for the supplying, storage, distribution, or furnishing *to or for the public of water for* manufacturing, municipal, *domestic,* or other *uses*; * * *." (Emphasis added).

Finally, § 68–3–3, N.M.S.A.1953 (Repl. Vol. 10, Pt. 1, Supp.1973) lists the exceptions to all those included within the definition of "public utility." The exceptions most pertinent to the instant case are " * * * any person * * * who furnishes the service * * * only to himself, his employees or tenants, * * *." What the Act declares in this case is that in order to preserve the public welfare, any person not engaged solely in interstate business, who operates a facility which supplies water to the public for domestic use, is a public utility unless he supplies water only to himself, his tenants, or his employees.

█ We stated the general test in Socorro Electric Coop., Inc. v. Public Service Co., 66 N.M. 343, 347, 348 P.2d 88, 90 (1959), quoting from 73 C.J.S. Public Utilities § 2, p. 992, in determining a public utility question.

" 'The test is, therefore, whether or not such person holds himself out, *expressly or impliedly,* as engaged in the business of supplying his product or service to the public, as a class, or *to any limited portion of it,* * * *.

The public or private character of the enterprise does not depend, however, on the number of persons by whom it is used, but on whether or not it is open to the use and service of all members of the public who may require it, to the extent of its capacity; * * *.' " (Emphasis added)

The key question is whether or not appellee is furnishing water "to or for the public." It has been noted that the Act is to be liberally construed. § 68–3–1.1, subd. B, supra. One of the purposes in enacting this Act is to preserve the public health, safety, and welfare. § 68–3–1.1, subd. A(2), supra. It is clearly within the aforementioned purpose to regulate as a public utility, a water system which supplies water to lot owners of a subdivision.

■ The Commission made the following findings of fact: all lot owners in Agua Fria Estates are members of the general public except appellee's son; whether a water system operates for public use depends upon the character and extent of the use; appellee has impliedly held himself out as engaged in the business of supplying water service to the general public as a class, or to a limited portion of it; appellee is ready to serve an indefinite portion of the public by his furnishing water service to all persons who have bought lots from him; appellee is furnishing to or for the public water for domestic uses; all lot owners are neither tenants nor employees of appellee; and appellee should be required to obtain a certificate of public convenience and necessity for the operation of his water system. The Commission then ordered appellee to obtain such a certificate or convey his water system to some other entity exempt from the provisions of the Act. On appeal to the district court, the order was vacated and annulled. The district court concluded that the findings of fact were not supported by substantial evidence. We have held previously that " * * * on appeals from administrative bodies the questions to be answered by the court are questions of law and are restricted to whether the administrative body acted fraudulently, arbitrarily or capriciously, whether the order was supported by substantial evidence, and, generally, whether the action of the administrative body was within the scope of its authority * * *." Llano, Inc. v. Southern Union Gas Company, 75 N.M. 7, 11, 399 P.2d 646, 649

(1964). We have reviewed the transcript of the hearing held before the Commission and conclude, as a matter of law, that the findings of the Public Service Commission are supported by substantial evidence.

■ The New Jersey Supreme Court, in Lewandowski v. Brockwood Musconetcong River, etc., Ass'n, 37 N.J. 433, 181 A.2d 506 (1962), held that a water association in the control of the developer of a subdivision was a public utility. It further stated:

> " * * * The character of the use is clear, i. e., to serve all members of the public who buy lots from the Developer. The extent of the use is equally clear, i. e., an entire housing development is dependent upon the Association for a prime necessity of life. *As the character and extent of the use make it public*, we conclude the Association is operating a water system for 'public use' * * *." (Emphasis added). Id., 37 N.J. at 447, 181 A.2d at 513.

In similar fashion the Iowa Supreme Court, in Iowa State Commerce Com'n v. Northern Nat. Gas Co., 161 N.W.2d 111, 115 (1968), stated that the phrase "to the public" means " * * * sales to sufficient of the public to clothe the operation with a public interest and does not mean willingness to sell to each and every one of the public without discrimination." We likewise conclude that sales to sufficient of the public to clothe the operation with a public interest, as well as the specific language of the statute, will determine whether or not the operation of a water system is for the public use.

Since the findings of fact made by appellant are supported by substantial evidence, and appellee is a public utility within the meaning of the New Mexico Public Utility Act, the decision of the district court is reversed with directions to reinstate the findings and order of appellant.

It is so ordered.

McMANUS, C. J., and STEPHENSON J., concur.