961 P.2d 147 (1998)
125 N.M. 302
1998-NMSC-017
In the Matter of The APPLICATION OF PNM ELECTRIC SERVICES, A DIVISION OF PUBLIC SERVICE COMPANY OF NEW MEXICO, for Approval to Provide Certain Optional Services on an Experimental Basis,
PNM ELECTRIC SERVICES, A DIVISION OF PUBLIC SERVICE COMPANY OF NEW MEXICO, Appellant,
v.
NEW MEXICO PUBLIC UTILITY COMMISSION, Appellee,
and
New Mexico Industrial Energy Consumers and Attorney General of the State of New Mexico, Intervenors.
In the Matter of The APPLICATION OF PNM GAS SERVICES, A DIVISION OF PUBLIC SERVICE COMPANY OF NEW MEXICO, for Approval to Provide Certain Optional Utility Services on an Experimental Basis,
PNM GAS SERVICES, A DIVISION OF PUBLIC SERVICE COMPANY OF NEW MEXICO, Appellant,
v.
NEW MEXICO PUBLIC UTILITY COMMISSION, Appellee,
and
New Mexico Industrial Energy Consumers, Intervenors.
No. 24007.
Supreme Court of New Mexico.
March 18, 1998.
Rehearing Denied July 1, 1998.
*148 Keleher & McLeod, P.A., Robert H. Clark, Clyde F. Worthen, Albuquerque, for Appellant.
Lee W. Huffman, Anastasia Stevens, Santa Fe, for Appellee.
Hon. Tom Udall, Attorney General, Charles F. Noble, Assistant Attorney General, Steven G. Michel, A.J. Grant LaCerte, Jr., Santa Fe, for Intervenors.
Rubin, Katz, Salazar, Alley & Rouse, Donald M. Salazar, Serina M. Garst, Santa Fe, for Amicus Curiae Texas New Mexico Power Company.
Cohen & Cohen, P.A., David S. Cohen, Santa Fe, for Amicus Curiae El Paso Electric Company.

OPINION
BACA, Justice.
{1} In these consolidated appeals, Appellant Public Service Company of New Mexico (PNM), pursuant to Rule 12-102(A) NMRA 1997, appeals decisions of the Appellee New Mexico Public Utility Commission (Commission) in Case Nos. 2655 and 2668. In its decisions, the Commission denied the applications of PNM to institute gas and electric "optional service programs." This Court now considers the propriety of the application denials. After careful review, we uphold the Commission decisions denying PNM's applications.

*149 I.
{2} In Commission Case 2655, PNM Gas Services[1] filed an application with the Commission seeking approval, on an experimental basis, of a new tariff that would allow PNM to offer certain gas optional services to retail customers. Specifically, PNM sought approval for a new food service management program for its business customers who operate food service facilities.
{3} Similarly, in Commission Case 2668, PNM Electric Services[2] petitioned for approval of a new tariff which would allow PNM, on an experimental basis, to offer electric optional services to retail electric customers. These services included four basic programs: 1) transient voltage surge suppression; 2) maintenance and repair services; 3) energy information services; and 4) power quality solutions.
{4} Participation in these programs was optional in that each eligible customer would have the choice of whether or not to contract with PNM for the service. Also, neither of these services were considered essential components of PNM's Commission-regulated gas or electric utility services. PNM contemplated that either PNM utility personnel or contractors retained by PNM would provide the optional services. PNM sought authority to offer the optional services under tariffed pricing provisions that were flexible. This would allow PNM to adjust prices between a floor and a ceiling price. The floor price would be PNM's incremental cost of providing the service and the ceiling price would be a multiple of the floor price intended to reflect the upper range of the estimated market value of the service.
{5} PNM Gas Services presented its optional service program before a Commission hearing examiner on December 12, 1995. Although the hearing examiner recommended approval of the tariffs for PNM Gas Services' optional service programs, on May 30, 1996, the Commission entered its final order on the application, rejecting most elements of the petition. A Commission hearing examiner also held a hearing addressing PNM Electric Services' application on March 4, 1996. The hearing examiner recommended against approving the tariffs proposed by PNM Electric Services due to a conflict with an earlier stipulation by PNM. Eventually, the Commission rendered a final order regarding this petition on August 5, 1996, rejecting most elements of PNM Electric Services' proposal as well.
{6} PNM Gas and Electric Services delineated the following goals for the optional service programs: to continue to be responsive to customer needs by offering services that are complementary to the existing utility businesses; to improve PNM's relations with its customers and hence its competitiveness; to improve safety and provide choice in the marketplace; and to build upon the core business of providing utility services by offering new energy-related options to eligible customers who would enter into contracts with PNM for the optional services.
{7} However, the Commission responded with similar reasons in both Cases 2655 and 2668 for rejecting the optional service plans. Primarily, the Commission stated that the optional services consisted of "utility-related non-utility services." As such, the Commission held that it would be inappropriate to treat these non-utility services as tariffed utility services under the New Mexico Public Utility Act, NMSA 1978, §§ 62-3-1 to 62-3-5 (1967, as amended through 1996). Therefore, the Commission disapproved of PNM's applications and proposed rates. The Commission reasoned that treating optional service programs as tariffed utility services created several possible problems, including a concern about real or potential cross-subsidies, potential liabilities, and claims of antitrust or unfair trade practices.
{8} While the Commission rejected the applications to carry out these optional service plans as utility-related programs, the Commission suggested in its final orders that an unregulated entity, such as a PNM corporate subsidiary, still might implement and *150 offer the optional service programs. The Commission informed PNM that it could reapply for approval to offer its proposed optional services as non-utility services, possibly by seeking implementation of these programs through a subsidiary. However, the Commission noted that PNM would have to make a proper filing as required by the Public Utility Act and Commission Rule 450, which require prior Commission approval before a utility can form a subsidiary or financially assist a non-utility activity.
{9} Upon denial of PNM's applications for diversification, this Court is asked to review: 1) whether the Commission had jurisdiction to deny PNM's applications; and 2) whether the Commission, by denying the application, unduly intruded upon matters of management prerogative. We hold that the Commission acted within its statutorily granted jurisdiction in denying PNM's applications and conclude that the denials did not constitute an impermissible intrusion upon management prerogative.

II.
{10} Statutes create administrative agencies, and agencies are limited to the power and authority that is expressly granted and necessarily implied by statute. See New Mexico Elec. Serv. Co. v. New Mexico Pub. Serv. Comm'n, 81 N.M. 683, 684, 472 P.2d 648, 649 (1970). Where a question of Commission jurisdiction is involved, courts afford little deference to the agency's determination of its own jurisdiction. See United Water New Mexico, Inc. v. New Mexico Pub. Util. Comm'n, 121 N.M. 272, 274-275, 910 P.2d 906, 908-09 (1996).
{11} However, when the Commission acts within its jurisdiction, this Court may not substitute its judgment for that of the agency, see Public Serv. Co. v. New Mexico Pub. Serv. Comm'n, 92 N.M. 721, 722, 594 P.2d 1177, 1178 (1979). We must also view the evidence in the light most favorable to the Commission's decision. See New Mexico Indus. Energy Consumers v. New Mexico Pub. Serv. Comm'n, 104 N.M. 565, 570, 725 P.2d 244, 249 (1986). The burden is on the party appealing to demonstrate that the order appealed from is unreasonable or unlawful. See NMSA 1978, § 62-11-4 (1965); see also Maestas v. New Mexico Pub. Serv. Comm'n, 85 N.M. 571, 574, 514 P.2d 847, 850 (1973). The issues we resolve are: 1) whether the action of the administrative body was within its authority; 2) whether the order was supported by substantial evidence, and; 3) whether the administrative body acted fraudulently, arbitrarily, or capriciously. Id. at 574, 514 P.2d at 850 (quoting Llano, Inc. v. Southern Union Gas. Co., 75 N.M. 7, 11-12, 399 P.2d 646, 649 (1964)).

III.
{12} We first review whether the Commission acted within its jurisdiction when it rejected PNM's applications. In this appeal, PNM characterizes the Commission's orders as exercising jurisdiction over its non-utility activities and contends that under NMSA 1978, § 62-3-4(B) (1992), the Commission lacks such jurisdiction. We disagree with PNM's characterization of the issue and conclude that the Commission's orders did not constitute interference with PNM's non-utility activities.
{13} Because the Commission acted pursuant to its power to ensure that utilities provide fair and just rates, the orders issued in this case were permissible. It is undisputed that PNM is a public utility. See NMSA 1978, § 62-3-3(G) (1996). As a public utility, PNM has a duty to provide adequate service at just and reasonable rates. See NMSA 1978, §§ 62-8-1 to 62-8-2 (1941). The Commission has "general and exclusive power and jurisdiction to regulate and supervise every public utility in respect to its rates[,]... service[s,] ... and ... securities ... and to do all things necessary and convenient in the exercise of its power and jurisdiction." NMSA 1978, § 62-6-4(A) (1996). Furthermore, it is the stated policy of New Mexico that the public interest and the interest of consumers and investors require the regulation of utilities so that service is available at just and fair rates. See NMSA 1978, § 62-3-1(B) (1967).
{14} New Mexico courts recognize this expansive regulatory power, broadly and liberally construing the Public Utilities Act to effect the Legislature's articulated policies. *151 See Griffith v. New Mexico Pub. Serv. Comm'n, 86 N.M. 113, 520 P.2d 269 (1974); see also Hogue v. Superior Utils., 53 N.M. 452, 456, 210 P.2d 938, 941 (1949) (stating that "[e]xperience has taught that public utility companies cannot be allowed to contract indebtedness at will and run their affairs as it may please them, and when the legislature passed the 1941 Act for their control[,] it gave the Public Service Commission broad powers over them.").
{15} In the PNM Gas Services case, the Commission officer heard evidence regarding complications potentially arising out of the implementation of PNM Gas Services' optional service program. Witnesses addressed the issues of cross-subsidies and potential cross-subsidies, liability from lawsuits, and antitrust immunity issues. As noted in the hearing officer's recommended decision, PNM Gas Services designed the proposed food service maintenance program to utilize utility assets. Witnesses testified that the use of existing personnel and facilities to perform optional services raised substantial questions about the utility's current utilization of employees and assets. It also created concerns about PNM Gas Services' potential for double recovery. The Commission's final order indicates that it considered PNM Gas Services' assertion that detailed accounting would provide sufficient protections to ratepayers, but the Commission did not find that such safeguards would suffice.
{16} The hearing officer noted in his recommended decision that PNM Gas Services' proposed services might expose PNM to liability from lawsuits. The Commission indicated that it carefully considered PNM Gas Services' contention that the liability arising from the provision of optional service is substantially the same for those associated with the delivery of core utility service. However, the Commission decided that the liabilities at issue in the case were new, additional liabilities arising from the proposed provision of non-essential services. The Commission also noted that losses associated with such liability could harm PNM and ratepayers in several ways: causing PNM to cut utility costs through delayed maintenance; laying off employees; or not making necessary capital investments. Finally, the Commission also expressed concern that if it granted PNM Gas Services' request to regulate such non-utility activities, the Commission would be providing PNM's non-utility activities immunity from antitrust claims under the "state action" doctrine. See generally Parker v. Brown, 317 U.S. 341, 351, 63 S.Ct. 307, 87 L.Ed. 315 (1943) (holding that the Sherman Act was not intended "to restrain state action or official action directed by a state"). For these reasons, the Commission rejected PNM Gas Services' proposal. The Commission noted similar concerns in its order regarding PNM Electric Services' petition and rejected it on substantially similar grounds.
{17} We conclude that the Commission acted within its jurisdiction and within the broad authority granted to it by the Legislature. While PNM attempts to characterize the Commission's action as regulation of its non-utility ventures, the Commission's orders do not regulate the prices or services being offered, nor is the Commission preventing PNM from providing the services. Instead, the Commission informed PNM that it may not engage in the proposed non-utility businesses unless it establishes them as corporate subsidiaries. By instituting these conditions, the Commission acted as the statute requiresprotecting PNM and its ratepayers from the potential adverse consequences that might arise if PNM implemented the optional service plans.
{18} Hence, the Commission's authority to act in this case does not come from its exercise of jurisdiction over non-utility activities but, instead, from its statutory obligation to ensure that PNM does not engage in activities that could harm PNM's ability to set just and reasonable rates. Acting within this context, the Commission was well within its authority to require that any establishment of the proposed optional service programs be carried out as unregulated corporate subsidiaries in order to obtain Commission approval of the optional services.
{19} PNM argues that NMSA 1978, § 62-3-4 (1992) limits the broad authority of the Commission. Section 62-3-4 states that "[t]he business of any public utility other than of the character defined in Subsection G *152 of Section 62-3-3 NMSA 1978 is not subject to the provisions of the Public Utility Act, as amended." We need not address whether this provision generally limits the power of the Commission over the non-utility activities of a public utility that are wholly unrelated to its public utility functions. Even assuming such a limitation, it is clear that PNM's optional services are of the character defined in Section 62-3-3(G). The Commission's jurisdiction extends to the rates and services of a public utility. Section 62-6-4(A). This grant of jurisdiction includes every "practice [or] act" of public utilities "in any way relating" to the rates and services of the utility. Section 62-3-3(H) (defining "rate"), (I) (defining "service"). The Commission found that the optional services are "utility-related," and PNM concedes that the optional services "are directly related to the provision of traditional gas and electric utility service." [Reply Br. at 5.] We conclude that the optional services are within the scope of Section 62-3-3(G) and, therefore, within the jurisdiction of the Commission.[3]

IV.

A.
{20} PNM also argues that the Commission's orders constituted an infringement upon management prerogative. PNM relies on authority that articulates a principle that regulatory commissions are limited in their ability to inject themselves into the internal management affairs of a public utility. However, we believe that the same broad authority that permits the Commission to act to ensure that rates are fair, just, and reasonable also answers PNM's contentions regarding management prerogative.
{21} We recognize that the Commission's authority to inject itself in the internal management of a public utility is limited. See, e.g., Missouri ex rel. Southwestern Bell Tel. Co. v. Public Serv. Comm'n, 262 U.S. 276, 288-89, 43 S.Ct. 544, 67 L.Ed. 981 (1923); Public Serv. Co. v. State ex rel. Corp. Comm'n, 918 P.2d 733, 739-40 (Okla.1996); Duquesne Light Co. v. Pennsylvania Pub. Util. Comm'n, 96 Pa.Cmwlth. 398, 507 A.2d 1274, 1278 (1986). However, we reject this rationale as a grounds for reversal. The "invasion of management" prohibition upon which PNM relies has waned. General Tel. Co. v. Public Utils. Comm'n, 34 Cal.3d 817, 195 Cal.Rptr. 695, 670 P.2d 349, 353-56 (1983) (en banc) (describing the history of the "invasion of management" rationale in California and rejecting its application on specific facts). Furthermore, courts have permitted commissions substantial latitude in protecting the public. See Arizona Corp. Comm'n v. State ex rel. Woods, 171 Ariz. 286, 830 P.2d 807, 818 (1992) (en banc) ("The Commission must certainly be given the power to prevent a public utility corporation from engaging in transactions that will so adversely affect its financial position that the ratepayers will have to make good the losses ...."). Even some of PNM's cited authority notes that commissions are generally empowered to act in areas seemingly reserved to management prerogative where the regulated action is "impressed with public interest." Public Serv. Co. v. State ex rel. Corp. Comm'n, 918 P.2d at 739 (quoting Missouri Pac. R.R. Co. v. Corporation Comm'n, 672 P.2d 44, 44 (Okla.1983)). PNM's additional cited authority fails to undermine this proposition.
{22} Our statute limits the authority of the Commission to matters of public concern, see Southwestern Pub. Serv. Co. v. Artesia Alfalfa Growers' Ass'n, 67 N.M. 108, 117-18, 353 P.2d 62, 68-69 (1960), and prohibits unreasonable and unlawful action by the Commission, see NMSA 1978, § 62-11-5 (1982). We understand this limit of authority as incorporating current notions of management prerogative. Cf. Mountain States Tel. & Tel. Co. v. Public Serv. Comm'n, 745 P.2d 563, 568-70 (Wyo.1987) (resolving issue of utility management prerogative as a matter of statutory authority). Thus, we need not separately address the issue of management prerogative, and, instead, we return to the three issues identified at the outset: 1) whether the Commission's decision was within its statutory grant of authority; 2) whether the Commission's decision was arbitrary or capricious; *153 and 3) whether the Commission's decision is supported by substantial evidence.

B.
{23} The Commission's decision in this case was premised on substantial evidence in the record. Substantial evidence is relevant evidence that a reasonable person might accept as adequate to support a conclusion. See New Mexico Industrial Energy Consumers, 104 N.M. at 570, 725 P.2d at 249. Substantial evidence concerning PNM's optional service plans and the potential risks posed to PNM's ability to guarantee just and fair rates was presented. In such instances, we will not substitute our judgment for that of the Commission. See Public Serv. Co., 92 N.M. at 722, 594 P.2d at 1178.

C.
{24} Arbitrary and capricious acts are those that may be considered wilful and unreasonable, without consideration, and in disregard of the facts and circumstances. See McDaniel v. New Mexico Bd. of Med. Exam'rs, 86 N.M. 447, 449, 525 P.2d 374, 376 (1974) (citing Smith v. Hollenbeck, 48 Wash.2d 461, 294 P.2d 921 (1956)). The record clearly indicates that the Commission carefully considered the facts and its available options before issuing its order. As noted in Section III of this Opinion, the Commission considered the policy concerns created by the proposed implementation of the optional service programs. The record indicates that the Commission's rationale in requiring use of corporate subsidiaries was firmly rooted in the public interest and in concern that PNM be able to provide service at just and reasonable rates. Furthermore, the record also demonstrates that before arriving at its decision, the Commission carefully considered the available options that might address its concerns. It concluded that the most appropriate solution was to require that the proposed optional service programs be conducted, if at all, through corporate subsidiaries. Hence, the Commission's actions were narrowly tailored to address concerns of the public interest, and nothing in the record suggests that the Commission acted arbitrarily or capriciously. Thus, we defer to the expertise of the Commission in its findings. See Attorney Gen. v. New Mexico Pub. Serv. Comm'n, 111 N.M. 636, 642, 808 P.2d 606, 612 (1991).

V.
{25} In sum, the Commission possesses the authority to issue the orders that were challenged in this case. The Commission acted pursuant to its power to ensure just and reasonable rates and to require adequate service. Furthermore, the record indicates that the Commission's actions were narrowly tailored and designed to address ratepayer concerns while minimizing interference with PNM's management prerogatives. For these reasons, we affirm.
{26} IT IS SO ORDERED.
FRANCHINI, C.J., and MINZNER, SERNA and McKINNON, JJ., concur.
NOTES
[1] PNM Gas Services is an unincorporated division of PNM providing gas services to PNM's New Mexico retail utility customers.
[2] PNM Electric Services is also an unincorporated division of PNM.
[3] We do not find it necessary to address the parties' arguments concerning Section 62-3-3(K) since other provisions of the statute answer the jurisdictional questions raised.